DETERMINED IN THE

# FIRST DEPARTMENT

AT

# GENERAL TERM,

### August, 1875.

---

## THE PEOPLE OF THE STATE OF NEW YORK,
### APPELLANTS, *v.* JOHN FLANAGAN, RESPONDENT.

*Annexation act—chapter* 613, 1873 — *Judge of tenth judicial district — election of*,
*November*, 1873 — *chapter* 329, 1874.

The provisions of chapter 613 of 1873, to the effect that the territory of several towns (on certain conditions to be annexed to New York city, on the 1st January, 1874), should constitute the tenth judicial district of the city of New York, and that there should be a justice of the court of said district who should be elected at the next general election thereafter to be held, construed to intend that such justice should be elected at the election held in November, 1873.
It was further *held*, that such justice was properly elected under the election laws of the several towns as they existed in November, 1873.

APPEAL from a judgment entered on a verdict directed by the court.

*F. G. Salmon*, for the appellants.

*John B. Haskin*, for the respondent.

DAVIS, P. J.:

This is an action in the nature of a writ of *quo warranto*, to test the title of the respondent to the office of justice of the tenth judicial district of the city of New York. The office was created

by chapter .613 of the Laws of 1873, which is the act familiarly known · as " the annexation act." By the provisions of that act, the towns of Morrisania, West Farms and Kingsbridge, then part of Westchester county, were, on the 1st day of January, 1874, to become part of the city and county of New York, provided the people of said several towns and of the city should, in the manner prescribed by the act, ratify the annexation at the general election of November, 1873. It was also provided by the act, that the territory of said several towns, when annexed, should constitute the tenth judicial district of the city of New York, and that there should be a district court therein, to be known as the Tenth Judicial District Court ; and that there should be a justice of said court who should be elected at the next general election thereafter to be held. The act was to take effect on the 1st day of January, 1874, except as otherwise therein provided. Among the exceptions was a provision for the appointment of a police justice, which officer was to be nominated .by the mayor of the city, on or before the 15th day of December, 1873 ; and for the election of a civil justice " at the next general election." The act was passed May 23d, 1873, and the first general election thereafter was held November 4th, 1873. We think there can be no doubt that the election of November, 1873, was the next general election intended by the act.

There seems to be no reasonable doubt that the legislature, in anticipation that the annexation would be perfected by the popular vote, intended to provide that the annexed territory should, on the 1st day of January, 1874, have a complete civil and criminal judicial organization, and had no intention that a year should elapse after the annexation was perfected, before a civil justice could be chosen and enter upon the discharge of his duties.

The principal point made by the appellant is, that while the election of the civil justice was to take place at the general election of 1873, it was nevertheless to be in all respects a city election, to be conducted in conformity to the election laws of the city, by officers appointed by the city authorities, and upon a registration of the voters of the several election districts as provided for the city : and this not having been done, the election of a civil justice was altogether unauthorized and illegal. The election, at which the defendant was chosen by a clear majority to the office of civil

justice, was held in conformity to the laws then operative in the county of Westchester; and by inspectors who had been chosen for the several election districts of the towns under and pursuant to the provisions of such laws.

It is apparent that, at the time the election was held, the city and county of New York had no territorial jurisdiction of the annexed towns. No power was conferred upon them to appoint, in such towns, boards of registration, or of inspectors of elections, or any officers connected with such general election. To have attempted to do so would have been a usurpation of power, and in legal effect there would have been two elections held separately, though simultaneously, conducted by different sets of officers and governed by different laws. We think the act in question did not intend to create any such incongruity. It was not intended to give the corporate authorities of the city and county any power to interfere with or control such election. The question is not, therefore, whether the election of civil justice should have been held under city authority, but whether, by force of the provisions of section 2 of the act, the authorities of the several towns should themselves have conducted the election of civil justice, in conformity with the laws then in force in the city and county of New York. Section 2 also provides that every election prior to January 1, 1874, shall be held under and according to the provisions of such laws as now exist. We think the intention of the legislature was, by the provision of the section firstly referred to above, to provide for the election of all officers after the territory should become annexed, and, by the provision secondly referred to, to keep in full force the existing laws of the several towns in respect to all officers to be chosen at the election of 1873. This construction relieves the act of great embarrassments, and places the conducting of the election of the civil justice in 1873, precisely where it could be most harmoniously carried on: in the hands and under the control of the existing local authorities.

We think the election was lawfully held. It is not necessary to pass upon the question whether the returns of the election should have been made to, and canvassed by, the county canvassers of Westchester, or to the canvassers of New York. The returns were made to both, with sufficient regularity in point of form. They

were not canvassed by the Westchester board, but were, by the city board; and the election of the defendant was declared and certified by the latter. The only effect of holding this to have been irregular, would be to adjudge it to be the duty of the Westchester board of canvassers to meet and canvass the returns, and as it is admitted in the case that the returns were formally correct, and that defendant received a large majority of the votes cast, he would in that event be declared to have been elected and entitled to enter upon his office on such election. His past official acts would be valid as an officer *de facto,* and his future, as an officer *de jure.* But, by section 18 of chapter 329 of the Laws of 1874, the legislature declared that the several acts done and performed under and in pursuance of sections 1 to 16, inclusive, of the annexation act of 1873, were thereby confirmed. We think the curative operation of this statute ought to be regarded as broad enough to cover any irregularity in the canvass of the returns in question.

Our conclusion is that the judgment should be affirmed.

Daniels and Donohue, JJ., concurred.

Judgment affirmed.